IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSE WEISTOCK,  :
    v.  :  Civil No. CCB-06-3034
      :
ROBERT LEVIN, et al.  :

## MEMORANDUM

Plaintiff Rose Weistock, individually and as the personal representative of the Estate of Harvey Weistock, brought this action against defendants Dr. Robert Levin and Midwestern Regional Medical Center ("Midwestern") for negligence and wrongful death. Now pending before the court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The plaintiff filed an opposition or, in the alternative, a motion to transfer venue. For the reasons stated below, the case will be transferred to the Northern District of Illinois.

## BACKGROUND

In April 2004, testing performed by Mr. Weistock's doctor in Maryland revealed that Mr. Weistock had contracted lung cancer. (Compl. at ¶ 6.) Upon notification of the cancer diagnosis, the Weistocks consulted with an oncologist at the Lapidus Cancer Institute in Baltimore, Maryland, regarding possible treatment. After consulting with the Cancer Institute, the Weistocks decided to seek a second opinion and contacted Midwestern Regional Medical Center, located in Zion, Illinois. ( Id. at ¶ 9.) In response to the Weistocks' request, Midwestern sent the Weistocks a marketing information packet and informational videotape about the hospital in Illinois. After reviewing the marketing materials, the Weistocks sent Mr. Weistock's medical records to Midwestern for review. (*Id.*) They decided to go forward with an initial

1

evaluation in Illinois in May 2004.  Midwestern paid the Weistocks' expenses for the trip to Illinois, where Mr. Weistock underwent various tests to determine the proper course of treatment.  (*Id.* at ¶ 10.)  The Weistocks liked the Midwestern facility, and Mr. Weistock underwent his first treatment during that initial visit.  (*Id.* at ¶ ¶ 11-12.)

During the course of his treatment, Mr. Weistock would fly to Illinois, undergo a cycle of chemotherapy there, and then fly home to Maryland.  Mr. Weistock did this several times over the course of 2004 and 2005.  In April 2005, Mr. Weistock returned to Maryland after a treatment of chemotherapy and became ill with kidney failure.  (*Id.* at ¶ 15.)  The plaintiff claims that the chemotherapy treatments administered to Mr. Weistock resulted in severe bone marrow aplasia and mucositis, which eventually led to Mr. Weistock's death. ( Id. at ¶ ¶ 16-17.)

Other than their relationship with the Weistocks, the defendants appear to have very limited contacts with Maryland.  Midwestern and Dr. Levin do not maintain an office, conduct any business, or contract to supply goods or services in Maryland. (Def.'s Mem. at Ex. 1, Levin Aff. at ¶ 1; Def.'s Mem. at Ex. 2, Kroll Aff. at ¶ 3.)  The defendants run television advertisements that appear on national television broadcasts, which sometimes reach residents of Maryland, and they also operate a website which can be accessed by Maryland residents.  No advertising targeted to Maryland residents, however, is done by Midwestern or Dr. Levin either on television or through the internet.  (*Id.* at Ex. 2, Kroll Aff. at ¶ 4.)  Mr. Weistock was referred to the defendants by their Maryland physician; the defendants did not seek Mr. Weistock out as a patient.  (*Id.* at ¶ 5.)  The defendants claim to have provided no medical care, consultation or treatment in Maryland.  (*Id.* at Ex. 1, Levin Aff. at ¶ 3; *Id.* at Ex. 2, Kroll Aff. at ¶ ¶ 5-6.)

Mrs. Weistock filed a complaint in October 2006 in Maryland state court alleging that the

defendants did not properly inquire into Mr. Weistock's pre-existing medical conditions. Specifically, Weistock alleges that Dr. Levin (Mr. Weistock's treating physician in Illinois) and Midwestern breached the duty of care owed to Mr. Weistock and were negligent in his treatment. The defendants removed the case to this court on the basis of diversity jurisdiction. In January 2007, Mrs. Weistock moved for leave to amend her complaint to add her children as plaintiffs. (Second Am. Compl. at ¶¶ 3-4.) The defendants opposed the amendment, arguing that the case should be dismissed for lack of personal jurisdiction in Maryland. The plaintiff argues that jurisdiction exists, but in the alternative requests that venue be transferred to the Northern District of Illinois rather than having the case dismissed.

## ANALYSIS

Generally, when a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). If the court does not hold an evidentiary hearing, however, as in this case, the plaintiff is only required to make a prima facie showing of personal jurisdiction. *Id.*; *Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 516 (D. Md. 2003). The court must resolve all factual disputes and make reasonable inferences in favor of the plaintiff. *See Carefirst*, 334 F.3d at 396.

The court may assert either specific or general personal jurisdiction over a non-resident defendant. Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state. See *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 and n. 8 (1984). General jurisdiction may exist when the defendant's contact with the

forum state is "continuous and systematic." *Id.* at 414-15 and n.9 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952). Weistock appears to argue that both general and specific jurisdiction exists over the defendants.

The court must perform a two-step inquiry to determine whether it may exercise personal jurisdiction over a defendant. First, the court must determine if jurisdiction is authorized under the long-arm statute of the forum state. *See Carefirst*, 334 F.3d at 396; *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Second, the court must decide whether personal jurisdiction comports with Fourteenth Amendment due process requirements. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the Fourteenth Amendment due process clause, and the statutory and constitutional inquiries therefore merge in this case. *See Carefirst*, 334 F.3d at 396-97. The Maryland long-arm statute, however, restricts specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). While Weistock did not cite a specific provision in her complaint, she relies on § 6-103(b)(4) in her opposition to the motion to dismiss. That section confers personal jurisdiction over a corporation that "causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts.

& Jud. Proc. §6-103(b)(4).

To determine whether the exercise of specific jurisdiction comports with due process here, the court must consider: (1) the extent to which Midwestern and Dr. Levin purposefully availed themselves of the privilege of conducting activities in Maryland; 2) whether Weistock's claims arise out of the defendants' Maryland-related activities; and 3) whether the exercise of personal jurisdiction would be constitutionally reasonable.   See *Carefirst*, 334 F.3d at 397; *Johansson Corp. v. Bowness Construction Co.*, 304 F.Supp.2d 701, 704 (D. Md. 2004).   Specific jurisdiction comports with due process if the defendants could have "reasonably anticipate[d] being haled into court" in Maryland, the forum state.  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.  The Fourth Circuit requires the defendants' contacts with the forum state to be "so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

A contract between an out-of-state party and an in-state party is not "automatically" sufficient to establish minimum contacts in the forum state.  *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985). The court must look at the surrounding facts "such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine 'whether the defendant purposefully established minimum contacts within the forum.'"  *Johansson Corp.*, 304 F. Supp. 2d at 705 (citing *Burger King*, 471 U.S. at 479). Courts have considered "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 626 (D. Md. 2000)(internal

quotation omitted). One of the most important factors is "whether the defendant initiated the business relationship in some way." *Id.* at 626-27 (quoting *Nueva Eng'g Inc. v. Accurate Electronics, Inc.*, 628 F. Supp. 953, 955 (D. Md. 1986).

Weistock cannot establish that the defendants purposefully established minimum contacts within the forum such that it would be constitutionally reasonable to exercise jurisdiction over them. First, there is no allegation that Midwestern or Dr. Levin established a physical presence in Maryland. They never opened an office or had an employee do business or perform services in Maryland. Second, the defendants did not initiate the relationship between the parties. The Weistocks' Maryland physician referred Mr. Weistock to Midwestern and the Weistocks were the first to initiate contact. Third, all the contacts between the defendants and the Weistocks were conducted in Illinois or by phone or mail. As this court noted in *Johansson*, phone or mail communications from outside the state into Maryland ordinarily do not "provide sufficient minimum contacts for the exercise of personal jurisdiction." *See* 304 F. Supp. 2d at 706. Fourth, and most important, the events giving rise to the cause of action occurred in Illinois. Weistock alleges that the defendants were negligent in treating Mr. Weistock. All of Mr. Weistock's treatments occurred in Illinois; neither the diagnosis nor any treatment was alleged to have occurred in Maryland. Accordingly, Weistock has not established a basis for the court to exercise specific jurisdiction over the defendants in Maryland.

Weistock's claim of general jurisdiction also fails. "The threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc.*, 126 F.3d at 623. To decide whether the exercise of general jurisdiction is proper, the court looks to whether a defendant's Maryland contacts are "so substantial and of

such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe v. State of Washington*, 326 U.S. 310, 318 (1945). As cautioned by the Fourth Circuit, "broad constructions of general jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). Furthermore, courts exercising general jurisdiction typically do so only "over nonresidents 'who are essentially domiciled within the forum state.' " *Atlantech Distrib. Inc. v. Credit Gen. Ins. Co.*, 30 F. Supp. 2d 534, 536 (D. Md. 1998) (citation omitted).

It is clear that the defendants are not "essentially domiciled" in Maryland. See *ESAB Group*, 126 F.3d at 624 (collecting cases). As noted above, the defendants are not based out of Maryland and claim never to have done business or treated a patient in the state. (Def.'s Mem. at Ex. 2, Kroll Aff. at ¶ 4.) Weistock argues that by virtue of Midwestern's presence on the internet and its running of advertisements on national television, it should be subject to jurisdiction in this forum. (Pl.'s Opp. Mem. at 6.) The subject of the internet and jurisdiction is discussed at length in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119 (W.D.Pa.1997) and its progeny, *see, e.g., Atlantech*, 30 F. Supp. 2d at 536-37, which distinguish between websites that "actively" try to sell goods and services and websites that "passively" merely provide information. *Zippo*, 952 F. Supp. at 1123-24. Here, the defendants operate an essentially passive website. While the defendants do have a "live chat" option that allows prospective patients to interact with cancer specialists, the website generally provides information and is not directly used to sell any goods or services. (Def.'s Mem. at Ex. 2, Kroll Aff. at ¶ 4.) The contract entered into by the parties in this case was not created over this "live chat" feature, nor was the website the means by which the Weistocks were introduced to the

defendants.  (Pl.'s Opp. Mem. at Ex. 1, Rose Weistock Aff. at ¶ 3.)  The website alone is not sufficient to create general jurisdiction.

Weistock also claims that advertising taken out by the defendants on national television creates jurisdiction in Maryland.[1]  Advertisements placed on national television that are not targeted at Maryland residents, even if seen by some Maryland residents, do not, in the absence of special circumstances, in and of themselves support a finding of general jurisdiction.  *See CEM Corp. v. Personal Chemistry AB*, 192 F. Supp. 2d 438, 441 (W.D.N.C. 2002) ("advertisements and solicitations not targeted to the forum, but ... that subsequently find their way into the forum, are entirely insufficient to support a finding of general jurisdiction, even when coupled with de minimus [sic] sales in the forum"); *see also Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (holding that where a defendant does no more than advertise and employ sales people in a state, such contacts are not sufficient to justify general jurisdiction).  A finding otherwise would mean that every business taking out a single advertisement on any of the national network or cable television stations would subject itself to jurisdiction in all fifty states.  Accordingly, as Weistock has cited no systematic or continuous contact by the defendants, general jurisdiction over them is not proper in Maryland.

If a plaintiff files suit in the wrong venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  It is within the sound discretion of the district court to transfer a case under § 1406 if doing so is in the interests of justice, and such transfer is within the court's

---

[1] As with the defendants' website, Weistock does not claim that she or her husband saw any of the defendants' television advertising or that the advertising led to the relationship between the parties. (Pl.'s Opp. Mem. at Ex. 1, Rose Weistock Aff. at ¶ 3.)

authority even though it lacks personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).  On the current record, the Northern District of Illinois is the district in which venue and personal jurisdiction over the defendants appears to be proper. It is in the interests of justice for this case to be transferred to the Northern District of Illinois, so that the plaintiff need not re-file in that district.  Transfer rather than dismissal is appropriate in this case, *inter alia*, to avoid any procedural complications that may be caused by dismissal.

   A separate Order follows.


  March 13, 2007               /s/
Date                     Catherine C. Blake
                       United States District Judge